**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Arréal Green,

<table>
<tr><td></td><td>Plaintiff,</td><td>Case No. 25-12768</td></tr>
<tr><td>v.</td><td></td><td>Judith E. Levy<br>United States District Judge</td></tr>
<tr><td colspan="2">Roush Holdings, LLC, <i>et al.</i>,</td><td>Mag. Judge David R. Grand</td></tr>
<tr><td></td><td>Defendants.</td><td></td></tr>
</table>

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ROUSH HOLDINGS AND ROUSH INDUSTRIES' MOTION TO DISMISS [10]

Before the Court is Defendants Roush Holdings, LLC and Roush Industries, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.)[1] The motion is fully briefed. (ECF Nos. 12, 14.)

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

---

[1] For ease of reference, the Court refers to Roush Holdings and Roush Industries as "Defendants" or the "Roush Defendants" in this order, but recognizes that Defendant Human Resources Ultd, Inc. did not join this motion to dismiss.

## I.   Background

Plaintiff Arréal Green brings suit against Roush Holdings, Roush Industries, and Human Resources Untld, which does business as HRU,Inc.-Technical Resources ("HRU"). (ECF No. 1, PageID.1–2.) Plaintiff "is a Black woman who holds a bachelor's and a master's degree, with experience in supply chain and the automotive industry." (*Id.* at PageID.3.)

HRU is a temporary placement agency that works with the Roush Defendants. (*Id.*) In March 2023, Plaintiff applied for a position at Roush Industries;[2] she was hired as a "Material Expeditor/Junior Buyer" and began this position in April 2023 with an initial six-month contract. (*Id.*) Plaintiff was one of two Black women who performed "commodity expeditor and junior buyer duties for Roush," and the remainder were white men and women. (*Id.* at PageID.4.) Plaintiff states that she received a higher workload than her peers but was informed that "she was given more work because of her strong performance." (*Id.* at PageID.4–5.)

---

[2] Plaintiff states that she was given an "assignment at Roush Industries." (*Id.* at PageID.3.)

In fall of 2023, Plaintiff learned that she was earning $6 per hour less than her white, female peers, and earning $7 per hour less than her white, male peers. (*Id.* at PageID.5.) Additionally, several of her white peers who started as a contractor/agency-placement employee were directly hired by Roush. (*Id.* at PageID.6.) Although Plaintiff applied for at least seven of these direct-hire positions, she was not selected and did not receive an interview. (*Id.*)

Plaintiff told Aaron Hale from HRU and Debbie Alfaro, her supervisor at Roush, that she was concerned about discrimination, as evidenced by her disparate pay, disparate workload, and Roush's failure to hire her. (*Id.*) In response, Alfaro called her a "Negative Nancy" "in front of colleagues at Roush." (*Id.*) Additionally, Plaintiff requested an increase in pay for her and her other black, female peer, but it was denied. (*Id.*) Plaintiff also raised concerns about discriminatory pay to Hale on December 8, 2023. Plaintiff alleges that Roush and HRU discussed her concerns regarding potential discrimination. (*Id.* at PageID.7.)

On December 13, 2023, Roush instructed HRU that it wished to terminate Plaintiff's employment, even though Plaintiff was told by

3

Green that she could continue at Roush until at least March 2024. (*Id.*)

Plaintiff was terminated on December 18, 2023. (*Id.*)

Plaintiff brings the following counts:

Count 1: 42 U.S.C. § 1981 race discrimination against all Defendants

Count 2: 42 U.S.C. § 1981 retaliation against all Defendants

Count 3: Title VII race and sex discrimination against the Roush Defendants

Count 4: Title VII retaliation against the Roush Defendants

Count 5: Equal Pay Act on the basis of sex against all Defendants

Count 6: Equal Pay Act retaliation against all Defendants

Count 7: Elliott-Larsen Civil Rights Act ("ELCRA") sex and race discrimination and retaliation against all Defendants

## II.   Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### III.  Analysis

#### A.    Roush Holdings, LLC as Plaintiff's employer

Defendants argue that Plaintiff's claims against Roush Holdings must be dismissed because Plaintiff has not sufficiently alleged that it was her employer. (ECF No. 10, PageID.44.)

Plaintiff's 42 U.S.C. § 1981, Title VII, Equal Pay Act, and ELCRA claims are brought against Roush Holdings as her former employer. According to Defendants, Plaintiff's allegations do not demonstrate that she was employed by Roush Holdings because her "only specific factual allegation about Roush Holdings is that: 'Roush Industries is a subsidiary of Roush Holdings, LLC.'" (ECF No. 10, PageID.46.) Defendants argue that Roush Holdings cannot be held liable for Roush Industries' alleged actions solely due to its parent/subsidiary relationship with Roush

Industries. Finally, Defendants contend that "the complaint perfunctorily refers to both Roush Industries and Roush Holdings collectively as 'Roush,' without any differentiation between the corporate entities," (*id.*), and that allegations that Roush Holdings participated in or was responsible for actions done by "Roush" are insufficiently pled.

"It is well established that a parent corporation and a subsidiary are in law separate and distinct entities." *Tennessee Valley Auth. v. Exxon Nuclear Co.*, 753 F.2d 493, 497 (6th Cir. 1985). Without more, Plaintiff's allegation that Roush Holdings is the parent company of Roush Industries is not enough to establish that Roush Holdings was also Plaintiff's employer. *See Thompson v. Quorum Health Res., LLC*, No. 1:06-CV-168-R, 2007 WL 2815972, at *2 (W.D. Ky. Sept. 27, 2007).

The sole allegation regarding Roush Holdings is that it is the parent company of Roush Industries. Given that Plaintiff was "assigned" to Roush Industries, her allegations against Roush Industries are sufficient. However, there are no allegations describing a relationship between Plaintiff and Roush Holdings. Therefore, her allegations are not sufficiently pled against Roush Holdings.

6

Plaintiff responds that the Roush Defendants have not "present[ed] any facts to support their contention that this entity had no role in the employment or termination of Plaintiff." (ECF No. 12, PageID.77.) Even if Defendants had presented such facts, the Court generally cannot consider facts outside the pleadings in a Rule 12(b)(6) motion without converting it to a summary judgment motion. Fed. R. Civ. P. 12(d); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) ("[I]f a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment.").

The Court recognizes that Plaintiff faces limitations because she does not have access to evidence that could demonstrate Roush Holdings' role as her employer. (ECF No. 12, PageID.77.) But Plaintiff's complaint must still contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

The claims against Defendant Roush Holdings are dismissed without prejudice. Should Plaintiff find evidence in the course of

discovery demonstrating that Roush Holdings was her employer or discriminated against her, Plaintiff may file an amended complaint consistent with Federal Rule of Civil Procedure 15.

### B.    Timeliness of Title VII Claims

Defendants contend that Plaintiff's Title VII claims are untimely because she did not file her lawsuit within 90 days of receipt of the Equal Employment Opportunity ("EEOC") notice of her right to sue. (ECF No. 10, PageID.47.)

"A plaintiff must file her Title VII claim within ninety days of receiving the EEOC's right-to-sue letter." *Tate v. United Servs. Assocs., Inc.*, 75 F. App'x 470, 471 (6th Cir. 2003). Here, the complaint states that Plaintiff received her EEOC Notice of Right to Sue on June 6, 2025. (ECF No. 1, PageID.2.) And the record reflects that Plaintiff filed her complaint on September 2, 2025, which is less than 90 days after she allegedly received the Notice on June 6, 2025.

Defendants, however, argue that Plaintiff's allegation regarding the date of receipt cannot be true. They attach a copy of Plaintiff's Notice

of Rights, which was issued on April 16, 2025. (ECF No. 10-1.)[3] Defendants assert that there is a gap in time between the April 16, 2025 issuance of the Notice and the alleged June 6, 2025 receipt of the Notice.[4] They urge the Court that it is proper at the motion to dismiss stage to "presume[ ]" that Plaintiff "received delivery of the right to sue notice within five days following the EEOC's mailing of the letter" and, thus, Plaintiff's complaint was filed over 90 days after the receipt of the Notice. (ECF No. 10, PageID.47.)

In support of this argument, Defendants cite *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000). (ECF No. 10, PageID.47–48.) However, *Graham-Humphreys* does not stand for the proposition that a "presumption of actual delivery and

---

[3] The Court may consider the Notice of Rights without converting the motion to dismiss to a motion for summary judgment because the Notice is referenced in the complaint. *See Omnicare*, 769 F.3d at 466; (ECF No. 1, PageID.10). However, the Court may not consider Plaintiff's affidavit (ECF No. 12-1) at this stage of the case. The affidavit is not referenced in Plaintiff's complaint nor a public record suitable for judicial notice. *See Omnicare*, 769 F.3d at 466.

[4] Perplexingly, the Roush Defendants claim the gap between April 16 and June 6, 2025, is "one hundred thirty-nine (139) days." (ECF No. 10, PageID.48.) The Court's calculation reflects that the gap is actually 51 days.

receipt" within five days supersedes allegations in the complaint at the motion to dismiss stage.

In *Rembisz v. Lew*, 590 F. App'x 501 (6th Cir. 2014), the Sixth Circuit declined to follow similar reasoning. The plaintiff in *Rembisz* alleged in his complaint that a final agency decision was issued on March 15, 2013, and was received by the plaintiff on March 25, 2013, making the filing of his complaint timely. *Id.* at 502. However, the defendant in *Rembisz* attached to its motion to dismiss documents demonstrating that the plaintiff received the decision before March 25, 2013. *Id.* at 503. The district court determined that the plaintiff's complaint was untimely because *Graham-Humphreys*' presumption of receipt within five days should apply despite the allegations in the complaint. *Id.*

The Sixth Circuit reversed the district court's decision. As set forth in *Rembisz*, exhaustion of administrative remedies is an "affirmative defense[ ], on which a defendant bears the ultimate burden of proof." *Id.* "While . . . exhaustion issues are susceptible to resolution on a motion to dismiss if a plaintiff affirmatively pleads himself out of court, a plaintiff need not respond to a motion to dismiss with affirmative matter raising a triable issue of fact on an affirmative defense." *Id.* at 504 (internal

10

citation omitted). "When the complaint alleges a late date of receipt, or non-receipt, for purposes of a Rule 12(b)(6) motion, a court must accept that allegation as true and must then deny a defendant's motion to dismiss for timeliness." *Id.*

Here, Plaintiff has not "affirmatively plead[ ] [herself] out of court." *Id.* at 503. Plaintiff alleges she received the EEOC Notice of Right to Sue on June 6, 2025, making the filing of her complaint timely. At this stage of the case, it is not proper for the Court to make a factual determination of when Plaintiff actually received the Notice, nor should the Court determine whether equitable tolling of the 90-day rule should apply.

Defendants' motion to dismiss Plaintiff's Title VII claims on the basis of timeliness is denied.

### C. Sufficiency of Plaintiff's Title VII and ELCRA claims

Next, the Roush Defendants argue that Plaintiff has failed to state a plausible claim for discrimination under Title VII and ELCRA. (ECF No. 10, PageID.49.)[5]

---

[5] Defendants' arguments do not differentiate between Title VII and ELCRA, nor do Defendants provide any indication that Title VII and ELCRA claims should be analyzed differently at the motion to dismiss stage. As such, the Court will also refer to both claims together.

11

The Court first addresses Defendants' overarching argument that Plaintiff's allegations are insufficient because the complaint fails to allege a prima facie case. (*See*, *e.g.*, ECF No. 14, PageID.165 (recognizing that Plaintiff "need not meet the *prima facie* evidentiary standard" but nonetheless arguing that "the complaint fails to allege a *prima facie* [case]").)

The Roush Defendants argue, repeatedly, that Plaintiff's complaint does not sufficiently allege a prima facie case of discrimination as set forth by *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Specifically, they claim that "[i]n ruling on 12(b)(6) motions, courts in the Sixth Circuit routinely dismiss discrimination claims where the complaint fails to allege plausible facts that satisfy one or more of the elements of a prima facie claim." (ECF No. 10, PageID.49.) Even after receiving Plaintiff's response, which informed Defendants that "there is no requirement to plead" a *McDonnell Douglas* prima facie case, (ECF No. 12, PageID.82), Defendants nonetheless argue that "Sixth Circuit courts routinely dismiss discrimination and retaliation claims under Rule 12(b)(6) when the complaint fails to allege a *prima facie* case, reflecting Plaintiff's failure to state a plausible claim." (ECF No. 14, PageID.165.)

The Court clarifies that Plaintiff is not required to plead a *McDonnell Douglas* prima facie case at the motion to dismiss stage. *See Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir.) ("Notably, at the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case as is required under *McDonnell Douglas* [ ]."); *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 908 (6th Cir. 2021) ("[T]he prima facie case under *McDonnell Douglas* is an evidentiary standard applicable at summary judgment or trial, not a pleading requirement."); *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("[I]t was error for the district court to require [the plaintiff] to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss."). Instead, Plaintiff must only "allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that Defendants discriminated against Plaintiff "with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." *Id.* at 610 (cleaned up).

      *i.*     *Compensation*

Defendants claim that Plaintiff's claims related to her wages should be dismissed because Plaintiff alleges that HRU, not the Roush Industries, set her rate of pay. (ECF No. 10, PageID.57.)

It is true that the complaint alleges that HRU "exercised control over Green's pay, benefits, and other material aspects of her employment," while Roush "exercised control over Green's day-to-day work activities, decided whether to extend Green's assignment, and whether or not to select Green for open direct-hire positions." (ECF No. 1, PageID.4.) However, Plaintiff also alleges that a representative from HRU "requested an increase in pay" on behalf of Plaintiff and another black woman at Roush, "but Roush denied this request." (*Id.* at PageID.6.) Viewing the allegations in the light most favorable to Plaintiff, *Keys*, 684 F.3d at 608, Plaintiff alleges that Roush Industries exercised some level of control over her pay. And Defendants do not provide any caselaw demonstrating that these allegations are insufficient. (*See* ECF No. 10, PageID.57.)

Defendants' argument regarding Roush Industries' control of Plaintiff's pay is denied.

### ii.   *Adverse Employment Action*

Defendants contend that "Plaintiff fails to allege any material adverse employment action that would support a *prima facie* case" of discrimination. (ECF No. 10, PageID.53.) Defendants appear to argue that the complaint's allegations that she was not hired to a direct-hire position, experienced lower pay, was given a disproportionate amount of work, and was given a lower title are insufficient as a matter of law because they are not "material" adverse actions. (*Id.* at PageID.51.)

Defendants' arguments are outdated. The Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), held that Title VII protects against "differences in treatment that injure' employees" when those differences are due to discrimination. *Muldrow*, 601 U.S. at 354 (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020)). Such differences in treatment need not be "economic or tangible"; instead, the plaintiff "must show some harm respecting an identifiable term or condition of employment." *Id.* at 354–55. Nor must the plaintiff show that the harm is "significant," "[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. In short, there is no requirement for Plaintiff to show a "materially adverse" action in order to bring a

discrimination claim under Title VII. *See Patterson v. Kent State Univ.*, 155 F.4th 635, 647 n.8 (6th Cir. 2025) (stating that the *Muldrow* opinion "declined to adopt the 'materially adverse' standard" for Title VII discrimination claims). For these reasons, Defendants' citation to *Kocsis v. Multi-Care Management., Inc.*, 97 F.3d 876 (6th Cir. 1996) is unavailing.[6]

Pursuant to Title VII, employers may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Plaintiff plainly claims that Defendants discriminated against her "with respect to [her] compensation" when she was paid less than her white peers and male peers. *Id.* Plaintiff also clearly alleges that she was discriminated against when her employer repeatedly "fail[ed] or refuse[d] to hire" her for their direct-hire positions despite her strong performance and instead

---

[6] *Kocsis* also holds little relevance to this case because it concerned a motion for summary judgment, and therefore benefited from discovery, and used the *McDonnell Douglas* burden shifting test. For these same reasons, Defendants' citation to *Vredevelt v. GEO Group, Inc.*, 145 F. App'x 122 (6th Cir. 2005) is also not convincing. (ECF No. 10, PageID.52.)

hired her white peers. And Plaintiff's allegations regarding being given a disproportionate amount of work and lower title could constitute "'differences in treatment that injure' employees." *Muldrow*, 601 U.S. at 354 (quoting *Bostock*, 590 U.S. at 681).

### iii.    Similarly Situated Employees

Defendants next argue that Plaintiff has not "adequately allege[d] [that] she received less favorable treatment than similarly situated non-Black or male employees who engaged in similar conduct." (ECF No. 10, PageID.53.) Regarding Defendants' argument that Plaintiff must meet the prima facie evidentiary standard at the motion to dismiss stage, the Court disagrees for the reasons set forth above. (*Id.* (arguing that "[f]or her *prima facie* case, Plaintiff must show she was similarly situated 'in all relevant aspects' to an employee of a different race or gender who was treated better than her").)

Defendants claim that Plaintiff's allegations are similar to those in *Han v. Univ. of Dayton*, 541 F. App'x 622 (6th Cir. 2023). In *Han*, an unpublished case, the Sixth Circuit found that the plaintiff's allegations were insufficient to show that his termination resulted from discrimination based on his race or gender. The plaintiff, who was an

17

Asian-American man in a tenure-track professor position, alleged that he was given a bad evaluation due to his race and/or gender and then was fired; he also alleged that a white male adjunct professor taught one of his classes after his termination. *Id.* at 627. The Sixth Circuit concluded that the plaintiff's allegations amounted to an argument that "simply because he was good at his job and was an Asian-American male, he is entitled to a reasonable inference of race and gender discrimination," which is insufficient for a showing that he is entitled to relief. *Id.* Defendants argue that Plaintiff's allegations are essentially the same.

The Court disagrees with this characterization of Plaintiff's allegations. Plaintiff's complaint sets forth that she and her peer contract workers had "roughly equivalent" work responsibilities as commodity expeditors and junior buyers, including "attend[ing] the same meetings, receiv[ing] the same assignments, and report[ing] to the same supervisor." (ECF No. 1, PageID.4.) She also alleges that she received "a higher workload" than her peers and "was informed that she was given more work because of her strong performance." (*Id.* at PageID.4–5.) One could reasonably infer from these allegations that Plaintiff was a strong performer compared to her peers. Despite her strong performance—both

individually and as compared to her peers—Plaintiff was not hired for at least 7 direct-hire positions and did not receive an interview, while all of her peers who were hired were white. (*Id.* at PageID.6.) Unlike the plaintiffs in *Han* and *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018), Plaintiff has set forth factual allegations demonstrating both the similarities between her and her peers and the different treatment she and her white peers experienced.[7]

Plaintiff is not required to set forth "detailed factual allegations." *Iqbal*, 556 U.S. at 678. "Viewing these allegations "in the light most favorable to the plaintiff and accept all allegations as true," *Keys,* 684 F.3d at 608, these allegations allow the Court to infer that there were similarly-situated white peers and male peers that were treated more favorably than Plaintiff.

---

[7] The Court similarly finds that Plaintiff's allegations sufficiently describe relevant details, unlike the plaintiffs in *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013), (*see* ECF No. 14, PageID.166), and *Meka v. Dayco Prods LLC*, 742 F. Supp. 3d 769 (E.D. Mich. 2024). (*See* ECF No. 10, PageID.58.)

### D.    Sufficiency of Plaintiff's Retaliation Claims

The Roush Defendants contend that Plaintiff fails to state a plausible claim for retaliation under Title VII and ELCRA. (ECF No. 10, PageID.59.)[8]

Defendants again argue that Plaintiff's claims are deficient because she fails to state a *McDonnell Douglas* prima facie case. (*See id.* at PageID.59–60.) This statement of the law is incorrect. Like her discrimination claims, Plaintiff is not required to do so at this stage of the case. *See Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *8 (6th Cir. Jan. 26, 2022) ("[A] complaint does not need to establish a prima facie case of retaliation or contain 'detailed factual allegations' in order to survive a motion to dismiss." (quoting *Keys*, 684 F.3d at 609–10)).

#### i.    Protected Activity

Title VII "prohibits an employer from retaliating against an employee who has 'opposed' any practice by the employer made unlawful under Title VII; and prohibits an employer from retaliating against an

---

[8] Again, the Court will analyze the Title VII and ELCRA retaliation claims together because Defendants' arguments do not differentiate between Title VII and ELCRA, nor do Defendants provide any indication that these claims should be analyzed differently.

employee who has 'participated' in any manner in an investigation under Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). Defendants argue that the complaint does not sufficiently allege that she engaged in a protected activity under the incorrect, prima facie standard. (ECF No. 10, PageID.60–61.)[9]

---

[9] In this part of their motion, Defendants allude to an argument that Roush Industries was not Plaintiff's employer as a matter of law. (ECF No. 10, PageID.60.) Defendants' argument on this issue is as follows:

> Plaintiff has not sufficiently alleged that Roush Industries is her employer. The Court should dismiss the retaliation claims pursuant to *Jaber v. 35th Dist. Ct.*, No. 24-CV-107902025, 2025 WL 2689022, at *7 (E.D. Mich. Sept. 19, 2025) (holding courts may dismiss an action where plaintiff's allegations of an employment relationship are insufficient at the motion-to-dismiss stage).

(ECF No. 10, PageID.61 n.5.) This argument is perfunctory and not properly presented to the Court. The *Jaber* court concluded that the plaintiff failed to allege an ELCRA claim using the multi-factor economic realities test, but Defendants do not conduct this analysis and apparently expect the Court to undertake this effort in their stead. Though Defendants describe the general holding of *Jaber*, they make no effort to explain *Jaber*'s analysis, let alone its applicability to Title VII claims.

Although Defendants continue this argument in their reply brief, this argument remains underdeveloped. They claim that Plaintiff has not shown that Roush Industries controlled her compensation or termination (ECF No. 14, PageID.167), but do not explain why that is sufficient for a finding that Plaintiff was not employed by Roush Industries. Furthermore, as noted by *Jaber*, "the economic realities test is a fact-intensive inquiry that is *unlikely* to ever be decided on a motion to dismiss," *id.*, 2025 WL 2689022, at *7 (quoting *Miller v. Stewart*, No. 15-14164, 2016 WL 8458985, at *3 (E.D. Mich. Dec. 13, 2016)), and Defendants do not explain why the circumstances of this case are such that it is appropriate to conduct this analysis at the motion to dismiss stage. For these reasons, the Court declines to

21

Defendants have not met their "burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Every case Defendants cite for this argument concerns a motion for summary judgment. (*See* ECF No. 10, PageID.60–63 (citing *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 772 (6th Cir. 2018) (summary judgment); *Booker v. Brown & Williamson Tobacco, Inc.*, 879 F.2d 1304, 1312–13 (6th Cir. 1989) (summary judgment); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343–44 (6th Cir. 2021) (summary judgment); *Scheske v. Univ. of Michigan Health Sys.*, 59 F. Supp. 3d 820, 827 (E.D. Mich. 2014) (summary judgment); *Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 45 (6th Cir. 2009) (summary judgment); *Land v. S. States Coop., Inc.*, 740 F. App'x 845, 850 (6th Cir. 2018) (summary judgment)).) These summary judgment opinions have limited applicability as they follow the evidentiary standards set forth in *McDonnell Douglas* and also benefited from discovery.

---

consider Defendants' argument that Plaintiff insufficiently pled that Roush Industries was her employer.

Defendants do not demonstrate that Plaintiff's protected activities were insufficiently pled. Their arguments that Plaintiff "never used the word 'gender' or identified the race of employees," (ECF No. 10, PageID.62 (cleaned up)), are more appropriate at the motion for summary judgment stage. Again, Plaintiff is not required to set forth "detailed factual allegations" at this stage of the case. *Iqbal*, 556 U.S. at 678.

As such, Defendants' argument regarding protected activity is denied.

### ii.  Causation

Defendants claim that Plaintiff has insufficiently pled a causal link between her protected activity and her termination. (ECF No. 10, PageID.63–64.)

Yet again, Defendants rely on the incorrect assumption that Plaintiff must plead a prima facie case and do not cite any cases that use the motion to dismiss standard. (*Id.* (citing *Beard v. AAA of Michigan*, 593 F. App'x 447 (6th Cir. 2014) (motion for directed verdict after conclusion of the plaintiff's case as trial); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (summary judgment)).) Defendants'

citations have limited applicability as they follow the evidentiary standards set forth in *McDonnell Douglas* and also benefited from discovery and/or trial.

Further, Defendants' statement of the law is incorrect. Defendants claim that Plaintiff's only showing of causation is the "temporal proximity between her alleged complaints . . . in November and her placement's termination in December." (ECF No. 10, PageID.64.) They cite *Nguyen*, 229 F.3d at 566, for the proposition that "[t]emporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." (ECF No. 10, PageID.64.)[10] However, *Nguyen* left open the possibility that temporal proximity, in some circumstances, may be sufficient to support an inference of causation. *Nguyen*, 229 F.3d at 567 (stating "there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an inference of causation]"). And the Sixth Circuit has since recognized that "temporal proximity alone may suffice to show a causal connection." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Montell*

---

[10] The Court holds no opinion on whether the complaint's only allegation regarding causation is temporal proximity.

*v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014);

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 615 (6th Cir. 2019).

Defendants' argument regarding causation is denied.

## IV.   Conclusion

For the reasons set forth above, Defendants' motion to dismiss (ECF

No. 10) is GRANTED IN PART and DENIED IN PART. Defendant Roush

Holdings is dismissed without prejudice. The remainder of Defendants'

motion to dismiss is denied.

IT IS SO ORDERED.

Dated: June 30, 2026           s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2026.

s/Richard Thieme
RICHARD THIEME
Case Manager

25